```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
AARON GAMS,

                            Plaintiff,

        -against-                                              05 Civ. 2899 (LAK)

WESTCHESTER COUNTY DEPARTMENT OF
PROBATION, et al.,

                            Defendants.
------------------------------------x
```

**MEMORANDUM OPINION**

Appearances:

>     Peter K. Vigeland
>     Samuel Lieberman
>     WILMER CUTLER PICKERING HALE AND DORR LLP
>     *Attorneys for Plaintiff*
>
>     Lance H. Klein
>     KEANE & BEANE, P.C.
>     *Attorneys for Defendants Town of Bedford and Matthew
>     DeBiase*
>
>     James J. Wenzel
>     Assistant County Attorney
>     *Attorneys for Defendants Westchester County Department
>     of Probation and Judie Skelton*

LEWIS A. KAPLAN, *District Judge.*

        This matter is before the Court in a most unusual circumstance. Plaintiff claims that the Westchester County District Attorney's office has threatened him with criminal prosecution if

he or his court-appointed counsel should attempt to serve process on plaintiff's former wife, Jianping Wang, one of the defendants in this action and a person whom the *pro se* complaint[1] describes as a "high-ranking Westchester County administrator conjoined within the Westchester County political apparatus."[2] He seeks an order directing that service be made upon Ms. Wang.

*Facts*

A.   *The Initial Stages of this Action*

At the time the complaint was filed, plaintiff was an inmate at New York's Oneida Correctional Facility ("OCF"), where he was serving a sentence of 1 ½ to 4 ½ years for forgery and endangering the welfare of a minor. The gist of the complaint is that his former wife had caused Judie Skelton, a Westchester County probation officer, to include in the presentence report with respect to the forgery and endangerment conviction, with knowledge that the information was false, baseless accusations by Wang that plaintiff had sexually abused his then stepdaughter. This allegedly resulted in plaintiff's treatment by the Department of Correctional Services as a sex offender, an initial denial of parole, and other unfavorable treatment while in prison. The complaint, which is brought under 42 U.S.C. §§ 1983 and 1985(3), asserts violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and seeks, among other things, a declaration that Skelton's actions were unlawful and an order requiring correction of the presentence report. It names as defendants Ms. Wang, the Westchester County Department of Probation, Ms. Skelton, the

---

[1] Plaintiff's subsequently appointed counsel advised the Court at a pretrial conference that he intends to file an amended complaint shortly.

[2] Cpt. ¶ 15.

Town of Bedford, and Town of Bedford police officer Matthew DeBiase.

Soon after the complaint was filed, plaintiff moved for a temporary restraining order and a preliminary injunction. That application expanded on the foregoing allegations.

Plaintiff there asserted that he was released from OCF in March despite Wang's efforts to block his release. On April 15, 2005, he telephoned Wang's attorney in an effort to determine whether the attorney would accept service of process in this action on behalf of Wang. Upon being advised of this inquiry, Wang allegedly contacted a Westchester assistant district attorney. The district attorney's office then allegedly charged or caused plaintiff to be charged with aggravated harassment 2nd degree (N.Y. Penal L. § 240.30) and criminal contempt 2d degree (*id.* § 215.50), both misdemeanors, in the Justice Court of the Village of Mount Kisco on the theory that his call to Wang's attorney constituted harassment as well as a violation of an order of protection in favor of Wang.[3] Plaintiff was arrested on April 21, 2005 and was in the Westchester County jail awaiting trial on these charges.[4] But this was not the end of his story.

Plaintiff claimed that the Westchester District Attorney's office sought $250,000 cash bail on these misdemeanor charges.[5] He claimed further that, on the day of his arrest, a Westchester County Department of Corrections sergeant told another officer in plaintiff's presence: "I just got off the horn with the D.A. This little fuck is not to be anywhere near a phone tonight, and he does

---

[3] This subsequently was confirmed by review of the information filed by the District Attorney's office. Lieberman Decl. Ex. 1.

[4] It appears that he now is at liberty although the Court has not been informed fully of his present situation or of the state criminal prosecution.

[5] Bail ultimately was set at $30,000.

not go from point A to point B without an escort." He then was classified a AAA security risk and placed in the so-called "old jail," which is used for violent felony offenders, gang members, escape risks, and discipline. At the time of the application, he apparently still was housed there, allegedly without justification.

On the day following plaintiff's arrest, he claims to have spoken to a parole officer. The officer, he said, explained what had transpired in the District Attorney's office. The officer, who supposedly was "recollecting numerous statements made by the detectives," allegedly said: 1) "I think you have put yourself in a bad position – Jeanine Pirro is involved <u>personally</u>",[6] 2) Don't fight the case in Mt. Kisco–whatever they offer you, just take it . . .", 3) "Jeanine Pirro will crush you into the pavement with her stiletto heels;" 4) "Those people [the West. Cty. DA Office] will send you back to state prison if you try to fight this thing;" 5) "Your ex-wife has a lot of juice, and she wants you sent away–you would have been better off calling her instead of her lawyer."[7]

On the following day, according to plaintiff, another individual, who identified himself only as a county employee, visited him at the jail. The visitor allegedly explained to plaintiff that he would not be sent back to state prison if he "behaved himself" and that if he was "thinking about a lawsuit naming your ex, forget about it–she should not exist for you."[8]

Subsequently, plaintiff claimed, his criminal attorney filed a motion in the Mount

---

[6] Gams Aff. ¶ 25 (emphasis in original).

[7] *Id.*

[8] *Id.* ¶ 26.

Kisco Justice Court to dismiss the charges.[9] Shortly thereafter, an assistant warden at the Westchester County jail allegedly told plaintiff's criminal lawyer that plaintiff's AAA status at the jail had been mandated by the District Attorney's office.[10] Later that day, after a call to the assistant district attorney from plaintiff's lawyer, plaintiff's classification was dropped to AA, which he claims is appropriate. But he remained in the old jail.

The essence of plaintiff's grievance thus was clear. He claimed that he was arrested on trumped up charges by the District Attorney's office because his ex-wife, allegedly a high ranking county official, "has a lot of juice" and is well connected politically. The prosecution and the onerous conditions in which he was held, in his view, were designed to force him to drop this action against his former wife and others who allegedly were involved in the inaccurate presentence report that is said to have caused him trouble while he was in state prison on the forgery and endangerment charges.

The Court denied the requested restraining order, essentially on the ground that the relief requested did not conform to the requirements of Rule 65(d) and out of concern that part of it might run afoul of *Younger v. Harris*[11] and its progeny.[12] Nevertheless, given plaintiff's lack of legal skills and his incarceration, it was evident that he could not effectively prosecute this action or seek whatever relief may be available. Accordingly, the Court granted plaintiff's application for

---

[9] The Court has not been informed of its status.

[10] *Id.* ¶ 33.

[11] 401 U.S. 37, 43-54 (1971).

[12] Memorandum and order, July 14, 2005.

appointment of counsel.

B.   *The Present Application*

On October 12, 2005, plaintiff's appointed counsel sought assurance from the Westchester District Attorney's office that service of the complaint and of a copy of a scheduling order issued by this Court (that directed plaintiff's counsel to serve such a copy) would not be considered to violate the criminal law or the order of protection. According to plaintiff's counsel, the line assistant initially gave the requested assurance. On October 17, 2005, however, another assistant district attorney reportedly telephoned plaintiff's counsel and repudiated the assurance given by the line assistant. According to plaintiff's counsel, this individual "repeatedly stated that his Office was reserving its right to prosecute [plaintiff] for serving the complaint in this action in the event the allegations in the Complaint proved baseless." Later that day, yet another assistant district attorney is said to have reiterated that position.[13] In consequence, defendant Wang has not been served with process.

*Discussion*

Plaintiff on this motion seeks only an order providing for service of process. The question whether he is likely to prevail on his underlying claim or, for that matter, on any claim of a First Amendment or other violation by the actions of the District Attorney's office therefore is not

---

[13] Lieberman Decl. ¶¶ 4-10.

implicated at this stage.[14]

The complaint here alleges violations of the Due Process and Equal Protection Clauses and seeks relief under two federal statutes, 42 U.S.C. §§ 1983 and 1985(3). This Court has jurisdiction over the subject matter of this action under Sections 1331 and 1343 of the Judicial Code.[15] The fact that a court has subject matter jurisdiction, however, is not alone sufficient to enable it to adjudicate a case or controversy placed before it. It must obtain personal jurisdiction over the individuals against whom relief is sought. The means by which this is done is the service of process – in this case, service of a summons issued by this Court along with a copy of the complaint.

Fed. R. Civ. P. 4(c)(2) provides in relevant part that, "[a]t the request of the plaintiff, . . . the court may direct that service be effected by a United States marshal, deputy United States marshal, or other person or officer specially appointed by the court for that purpose" and that "[s]uch an appointment must be made when the plaintiff is authorized to proceed in forma pauperis . . ."

Here, plaintiff was authorized to proceed *in forma pauperis* by order of the Chief Judge. The alleged threats by the Westchester County District Attorney's office of possible prosecution of plaintiff, should his lawyers attempt to serve process on Ms. Wang, which on this

---

[14] Plaintiff does not base this motion on the ground that the threats of the District Attorney's office to prosecute him if he serves process in this case violates the First and Fourteenth Amendments. He does not here seek to enjoin any action by the District Attorney's office. *See, e.g., Wilson v. Thompson,* 593 F.2d 1375 (5th Cir. 1979). Nor is there occasion at this juncture to address any questions concerning the validity or applicability of the state court order of protection, for which there presumably was good reason, or the constitutionality of the New York harassment statute.

[15] 28 U.S.C. §§ 1331, 1343.

limited record stand uncontradicted,[16] obstruct the performance of this Court's duty to adjudicate plaintiff's claims because they interfere with its obtaining of personal jurisdiction over one of the defendants. Relief therefore is appropriate.

*Conclusion*

Plaintiff's motion is granted. The United States Marshal or any Deputy United States Marshal is directed to effect service of process on defendant Jianping Wang in a manner prescribed by Fed. R. Civ. P. 4(e). Plaintiff's counsel is directed to furnish the United States Marshal with such documents and information as may be required to carry out this order.

SO ORDERED.

Dated: November 1, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[16] The District Attorney's office is not a party to this action and has not sought to be heard on this motion.